Benjamin Shander v. Commissioner.
Shander v. Commissioner
Docket No. 111788.
United States Tax Court
1943 Tax Ct. Memo LEXIS 407; 1 T.C.M. (CCH) 774; T.C.M. (RIA) 43123; March 11, 1943
*407 Held, that a partnership between petitioner and his two sons existed during the taxable year. Robert Ash, Esq., Munsey Bldg., Washington, D.C., for the petitioner. Paul E. Waring, Esq., for the respondent. VAN FOSSAN Memorandum Opinion VAN FOSSAN, Judge: The respondent determined a deficiency of $23,840.87 in income tax for the year 1940. This holding was based on the finding that "the evidence submitted indicates that you operated the business as a sole proprietorship" and not as a partnership. The question thus raised is one of fact: Did a partnership exist in 1940 between petitioner and his two sons, Leon J. Shander and Sidney A. Shander? [The Facts] The facts are: The petitioner has been engaged in the manufacture of women's apparel since 1915. The two sons, Leon J., born December 15, 1911, and Sidney A., born March 19, 1916, were respectively 29 and 24 years of age during the taxable year. Previous to 1940 petitioner conducted the business as an individual. While still in school the two sons began working in the business. After finishing school they devoted all of their time to the business, working in all branches thereof. Leon was engaged primarily in selling and *408 advertising. He had charge of the New York office and sold goods on the road. Sidney devoted himself to the inside work of the factory, was head of the shipping room, purchased supplies, and handled other details of the factory. In 1936, petitioner was advised by his bank that due to his age the bank would require the assignment of a life insurance policy on his life as a condition of continuing to loan him money. Petitioner thereupon consulted his attorney and his accountant as to the advisability of taking his sons into partnership. The question of a partnership was discussed from time to time thereafter and in November, 1939 it was determined that a partnership should be formed. In January, 1940 the matter was discussed further and a partnership agreement was drawn up by petitioner's attorney. The agreement was dated and signed February 5, 1940 but was, by its terms, effective from and after January 2, 1940. The agreement provided as follows: THIS AGREEMENT, made this 5th day of February, 1940, by and between BENJAMIN SHANDER, party of the first part, hereinafter called "Father," and LEON J. SHANDER AND SIDNEY A. SHANDER, parties of the second and third parts, respectively, *409 hereinafter called "Sons," all of Philadelphia, Pennsylvania, WITNESSETH: WHEREAS, Father for many years has been engaged, under his own name, in the business of manufacturing and selling women's apparel; and WHEREAS, Father is desirous of admitting Sons into partnership with him in the said business; and WHEREAS, the net worth of the said business as of January 2, 1940 was the sum of $83,641.14, as more fully appears in the books of said business; NOW, THEREFORE, IT IS HEREBY AGREED AS FOLLOWS: 1. The parties hereto, as partners, shall engage in the business of manufacturing women's apparel under the name of "BENJAMIN SHANDER" from and after January 2, 1940. 2. The assets with which the partnership shall begin business shall consist of the assets of Father's former business, and the capital interest and account therein of the parties as of January 2, 1940 shall be the following: Benjamin Shander
$83,641.14
Leon J. Shander
None
Sidney A. Shander
None It is the intention of the parties that Sons shall acquire an interest in the capital of the business by contributing assets thereto from time to time, and particularly by not withdrawing all of the profits to which *410 they may hereafter be entitled. 3. Profits and losses shall be divided and shared among the parties equally. 4. Father may withdraw his share of the net profits at the end of each fiscal year. Sons may withdraw such part of their share of the net profits at the end of each fiscal year as shall be determined and fixed by Father. The balance of the said profits belonging to Sons shall remain in the business and shall be credited to Sons as a capital interest in the business. 5. The drawings of the parties shall be equal and shall be in such amounts as shall be mutually agreed on. 6. Full and accurate accounts of all transactions of the partnership shall be kept in proper books of account which shall be kept in the place of business of the partnership, and each party shall at all times have access to and may inspect any of them. 7. Each party shall, at all times: (a) Pay and satisfy his own personal debts. (b) Devote all of his time and attention to the business, or profession, of the partnership. (c) Inform the other parties of all of his work for, and transactions in behalf of, the partnership. (d) Neither assign, mortgage, nor sell, his share in the partnership, or any part *411 thereof, or enter into any agreement as the result of which any person, firm, or corporation, shall become interested with him therein. 8. Sons shall not, without the consent of Father first obtained, in behalf of the firm: (a) Assign, transfer, pledge, compromise, or release, any of its claims, or debts, except upon payment in full, or arbitrate, or consent to the arbitration, of any of its disputes, or controversies. (b) Make, sign, endorse, execute or deliver: (1) assignments for the benefit of creditors, (2) checks, (3) notes, (4) bonds, (5) confessions of judgment, (6) chattel mortgages, (7) deeds, (8) guarantees, and (9) contracts of any kind whatsoever. (c) Hire, lease, purchase, sell, or mortgage, any real estate, or any interest therein, or enter into any contract for any such purpose. (d) Borrow, or loan, money, or make, execute, deliver, accept, or endorse, any commercial paper, or use the credit, money, or other property, of the partnership. (e) Hire, or agree to hire, any person or persons on behalf of the partnership. (f) Engage in any dealings, or transactions, with any person, partnership, or corporation on behalf of the partnership. (g) Make any purchases, *412 commitments or obligations of any kind whatsoever on behalf of the partnership. 9. Any party who shall violate any of the terms, provisions and conditions of this agreement shall keep and save harmless the partnership property, and shall, also, indemnify the other parties from any and all claims, demands and actions, which may arise out of, or by reason of, such a violation of any of the terms, provisions and conditions hereof. 10. On December 31st in each year, a full, true and accurate account shall be made in writing of all of the assets and liabilities of the partnership, and of all of its receipts and disbursements, and the interest of each party in the capital and other assets of the partnership, and in the net profits thereof, shall be ascertained, and the amount of net profits actually and without contingency earned, or the amount of net loss sustained shall, thereupon, be respectively credited or debited on the books of account of the partnership to the respective parties, share and share alike. In preparing such account, there shall be charged to the expense account the salaries paid to the parties hereunder, and all other expenses of the business, and, also, all losses *413 and other charges incident, or necessary, to the carrying on of the partnership business. 11. (a) Father may withdraw any part or all of his interest in the capital of the business at any time. No Son, however, may withdraw his interest in the capital of the business until such interest is greater than the interest of Father therein, in which event Son may withdraw such portion of his interest in the capital of the business as will equal the difference between Son's interest and Father's interest. (b) Sons, or either of them, may, however, terminate their relationship with the business at any time by giving notice to the other or others, in which event the interest of the withdrawing Son or Sons in the business shall be paid to him or them by the remaining partner or partners in equal weekly installments over a period of five (5) years. In order to determine the interest of such withdrawing partner or partners in the business of the partnership, a full and accurate inventory shall be then prepared, and the assets, liabilities and income, both gross and net, shall be ascertained, and an account shall be prepared showing the interest of the withdrawing partner or partners in the business *414 as of the date of withdrawal. (c) If Father shall determine to withdraw from the partnership, then and in such event a full and accurate inventory shall be prepared and the assets, liabilities and income, both gross and net, shall be ascertained, and an account shall be prepared showing the interest of each partner in the business, and Father may, at such time, sell his interest in the business to Sons for such price and upon such terms and conditions as may be mutually agreed upon between Father and Sons. (d) The term of the partnership shall continue until terminated by any of the parties. If terminated by Father, the interest of Sons in the business shall be ascertained in the manner hereinbefore provided, and Father shall retain the business and all of the good will thereof but shall pay to Sons their interest in the business as thus determined. If terminated by Sons, or either of them, the business, assets and good will of the partnership shall revert to Father; the interest of the withdrawing Son or Sons in the business shall be ascertained as hereinbefore provided, and shall be paid to the withdrawing Son or Sons by the remaining partner or partners in equal weekly installments *415 over a period of five (5) years. (e) If Sons, or either of them, withdraw from the business, or upon the termination of the partnership, Sons shall not thereafter, during the lifetime of Father, engage in or become associated with any business similar to or in competition with the partnership business whose name shall contain in any manner whatsoever the name "SHANDER" (including the names, "BENJAMIN SHANDER," "LEON J. SHANDER" and "SIDNEY A. SHANDER"), nor shall they use the firm name, nor, either in conjunction with their own name or otherwise, use the words "formerly of Benjamin Shander" or "late of Benjamin Shander" or any other combination of words containing the firm name. 12. If any Son shall be guilty of misconduct of such a character as to render it impractical for the parties to carry on the partnership business, then, in such event, the offending Son may be expelled from the partnership by Father. After such expulsion, the other parties shall pay to such expelled party the value of such expelled party's interest in the capital of the business, ascertained in the manner hereinbefore recited, and such value shall be paid to such expelled party in equal weekly installments *416 over a period of five (5) years. 13. Upon the death of any party, the partnership shall not terminate, but the remaining partner or partners shall be entitled to purchase the interest of the deceased party in the partnership business by paying to his personal representative, in full satisfaction and discharge of the deceased party's interest in the partnership, the value of such deceased party's interest in the capital of the business as determined in the manner hereinbefore recited. 14. If any dispute or disagreement whatsoever shall arise between or among the parties with respect to the conduct of the business of the partnership, or if its dissolution, or with respect to any other matter, cause or thing whatsoever not herein otherwise provided for, the same shall be decided and determined by Father; the decision of Father shall be made in writing and shall be binding and conclusive upon the parties hereto, and there shall be no appeal therefrom. IN WITNESS WHEREOF, the parties hereto have hereunto set their hands and seals, the day and year first above written. The books of the company bear entries dated January 24, 1940, showing that Leon and Sidney each on that date contributed *417 $3,000 to the capital of the partnership. These contributions were first credited to the personal accounts of the sons but were later placed in their capital accounts. Due to the oversight of the attorney, the partnership was not registered under the Pennsylvania Fictitious Name Statute until August 1940. Creditors were advised of the formation of the partnership early in 1940. A subsidiary of Dunn & Bradstreet issued a notice of the partnership under date of May 3, 1940. On August 12, 1940, Dunn & Bradstreet issued a notice of the formation of the partnership. The bank with which petitioner did business was advised of the partnership early in 1940. After the execution of the partnership agreement, the sons continued throughout the year 1940 their activities in the business. Due to domestic difficulties of Leon and his personal differences with his father, Leon withdrew from the partnership in June, 1941. Upon his withdrawal Leon was paid the amount of his capital account shown on the books of the partnership, $26,954.58. The partnership evidenced by the agreement of February 4, 1940, was not formed for the purpose of reducing or avoiding taxes. [Opinion] Petitioner contends *418 that the above facts established that on February 5, 1940, a legitimate business partnership, operating under the name of Benjamin Shander, was created, effective as of January 2, 1940; that it was conceived for proper business purposes and was not a tax-saving device; that it was operated throughout the year 1940; and that, accordingly, petitioner made proper return of his share of the firm's income. Respondent argues that the petitioner managed and controlled the business in 1940, as he had prior thereto as a sole proprietorship; that Leon and Sidney did not have any capital invested in the business in 1940; that the partnership was a tax-saving scheme and should not be recognized for Federal tax purposes. We sustain the petitioner. The facts reveal that the partnership was motivated by legitimate business considerations and that it was not a mere tax-saving scheme. The father contributed the going business, his capital and services. The sons contributed their services and a small amount of capital. There was an agreement for sharing the profits and losses. All the essential elements of a normal business partnership were present. The facts that the father held a tight rein on *419 the management and that the rights of the sons were circumscribed is in nowise abnormal and does not lead to a contrary conclusion. See , affirmed ; ; ; . The cited cases demonstrate that the arguments advanced by the respondent are of no weight in the factual situation here present. The case of , on which respondent strongly relies, is readily distinguishable. There the court squarely held that tax considerations were the motivating cause of the formation of the partnership. In many other respects, likewise, the case is distinguishable. Decision will be entered under Rule 50.